UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

| | |
|---|---|
| Todd E. Duffy, Esq. | David S. Frydman, Esq. |
| Douglas A. Amedeo, Esq. | FRYDMAN LLC |
| DUFFYAMEDEO LLP | Proposed Special Litigation |
| Proposed Counsel for Debtor | Counsel for Plaintiff |
| 132 W. 31St Street, 9th Floor | 501 Fifth Avenue, 15th Floor |
| New York, New York 10001 | New York, New York 10017 |
| (212) 729-5832 | (212) 355-9100 |
| tduffy@duffyamedeo.com | dfrydman@frydmanllc.com |
| damedeo@duffyamedeo.com | |

---

In re

TOMIA BEAUTY BRANDS LLC,

      Debtor.

Chapter 11

Case No. 23-16967-VFP

---

TOMIA BEAUTY BRANDS LLC,

      Plaintiff,

-against-

JACK BENSASON, ASUF LANDAU, LUCKY COLOR, INC.,
LUCKY COLOR ISRAEL, INC. and TRESTIQUE, INC.,

      Defendants.

Adv. Pro. No.

COMPLAINT

---

Plaintiff Tomia Beauty Brands LLC ("Tomia" or "Debtor"), by its attorneys, for its Complaint against defendants alleges, as follows:

NATURE OF ACTION

1. This is an adversary proceeding commenced pursuant to Federal Rule of Bankruptcy Procedure 7001 alleging, among other things, breach of fiduciary duty, lender liability and breach of restrictive covenants against defendant Jack Bensason ("Bensason"), a manager of Tomia, and the balance of the defendants. As set forth

below, defendants entered into a common plan and scheme, based upon breaches of fiduciary duty and restrictive covenants, to loot Tomia and take over its business.

2. Tomia is a cosmetics company that over eight years has developed a loyal following for its extensive line of sustainable products currently sold on Amazon and Debtor's website. Upon information and belief, the defendants entered into an illegal agreement to funnel to Bensason cash and a secret interest in the corporate defendants in exchange for Bensason wrongfully transferring operational control of Tomia and its trade secrets. Armed with this inside track to Debtor's operations, website, trade relationships and inventory, defendants apparently purchased a certain secured loan of Debtor for pennies on the dollar and now seek to facilitate defendants' looting of Debtor through a corrupt UCC Article 9 disposition of collateral.

## JURISDICTION AND VENUE

3. On August 13, 2023, Tomia filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey entitled *In re Tomia Beauty Brands LLC*, Case No. 23-16967 (the "Bankruptcy Case"). The Court has jurisdiction under 28 USC §§ 1334(b), 157(a) and 157(b) because this adversary proceeding arises under the bankruptcy case.

4. This adversary proceeding is a core proceeding pursuant to 28 USC §§ 157(b)1 and (b)(2)(I) and (J).

5. Venue is proper pursuant to 28 USC § 1409(a).

## PARTIES

6. Tomia is a New York limited liability company creditor with a principal place of business in New York, engaged in the business of developing, marketing and selling cosmetics under the brand Trestique.

7. Bensason, is a manager and member of Tomia and, upon information and belief, is a resident of New York and in 2023 has become an officer and shareholder of the corporate defendants.

8. Asaf Landau ("Landau"), upon information and belief, is a resident of Israel and an officer and shareholder of the corporate defendants.

9. Lucky Color, Inc., upon information and belief, is a Delaware company that was incorporated January 17, 2023 and on March 29, 2023 filed a name amendment to "Trestique, Inc."  As set forth below, however, after the name amendment, an entity named "Lucky Color, Inc." became a payer for one of Debtor's key trade partners.  Upon information and belief, Lucky Color, Inc. is the entity that sent to Tomia the below referenced notice of disposition of collateral, stating it was the successor of Decathlon Alpha IV, L.P. ("Decathlon") a lender to Debtor.

10. Lucky Color Israel, Inc., upon information and belief, is some form of d/b/a for Lucky Color, Inc. or alternatively is a related entity sharing common ownership and management.

11. Trestique, Inc., upon information and belief, is the amended name of Lucky Color, Inc. or alternatively some form of d/b/a for Lucky Color, Inc. or alternatively is a related entity sharing common ownership and management.  Lucky Color, Inc.,

Lucky Color Israel, Inc. and Trestique, Inc. are collectively referred to herein as "Lucky" and collectively with Landau referred to herein as the "Lucky Defendants".

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

The Parties' Agreements

12. Jennifer Kapahi ("Kapahi") and Bensason entered into an operating agreement for Tomia in 2014 and since then they have grown Tomia, attracting investors and financing. The current operating agreement is the Third Amended and Restated Operating Agreement of Tomia Beauty Brands LLC, dated as of October 22, 2018 (the "Operating Agreement").

13. The Operating Agreement, at Sections 4.5 and 4.6, prohibits Bensason from divulging Debtor's trade secrets and from directly or indirectly engaging in competing business activity. Pursuant to Section 12.7 of the Operating Agreement, it is governed by New York law.

14. The Covid-19 pandemic put significant strains on Debtor, including on its supply chain and sales. To maintain and grow its sales, Debtor requires capital to support continued social media and marketing.

15. To help fund Debtor's marketing and operations and riding out the negative effects of the pandemic, Tomia, Decathlon, Bensason and Kapahi entered into a Revenue and Security Agreement, as of August 25, 2021 (the "Loan Agreement"). The proceeds of the Loan Agreement provided funding to Debtor (the "Loan"). Pursuant to the Loan Agreement, Decathlon obtained a broad security interest over Debtor's assets. Pursuant to Article 11 and Section 12.3 of the Loan Agreement, it is governed by New York law.

16. As a condition to Decathlon providing advances under the Loan Agreement, Tomia, Bensason, as a "Key Person", and Decathlon, entered into a Non-Competition, Non-Solicitation and Confidential Information Agreement, dated as of August 25, 2021 (the "Non-Competition Agreement").

17. In Section 7 of the Non-Competition Agreement, Bensason agreed, among other things, not to engage or take an ownership interest in a competing business, not to use or disclose confidential information except for the benefit of Debtor and not to interfere with Debtor's contractual relationships.

18. Section 11.11 of the Non-Competition Agreement provides for payment of attorney's fees to a prevailing party in a dispute between the parties relating to the agreement. Pursuant to Section 11.12 of the Non-Competition Agreement, it is governed by New York law.

19. On or about January 17, 2023, Decathlon served Tomia with a notice of payment default under the Loan and acceleration of the balance due in the stated amount of $863,497.92. Decathlon did not enforce the default. Decathlon continued discussions with Tomia, which included an offer by Decathlon to make an additional advance under the Loan Agreement in an effort to continue Debtor's business to facilitate a workout of the Loan.

Defendants' Common Plan and Scheme

20. Although Debtor enjoyed success in sales of the Trestique cosmetics, it required additional capital to continue its growth. In 2021, Bensason, Kapahi and others engaged in a process to attract investors in Debtor.

5

21. In late 2022, Bensason introduced Landau to Debtor. Landau proposed to put together an investor group to raise money to fund the workout of the Loan and capitalize Tomia or a successor entity. Among other negotiated terms, the members of Debtor would keep a reduced equity ownership stake and Kapahi and Bensason would continue as managers.

22. Landau and Bensason produced an offer from Decathlon to satisfy the Loan. The offer required a cash payment to Decathlon of as little as $50,000 plus an equity stake in the going forward company.

23. As negotiations continued, in February 2023 Bensason advised that Landau arranged for an intermediary in Israel to pay $35,000 to Bensason. Bensason, in turn, put the money into Debtor's account as a bridge until the proposed recapitalization with Landau was closed.

24. In March 2023 Landau and Bensason disclosed that they were agreeing to compensation terms for Bensason to participate in the new investor group. Landau and Bensason refused, however, to disclose how much cash and equity Bensason would receive above what other members and Kapahi, as co-manager, would receive.

25. With the refusal to disclose Bensason's side deal to profit from the Landau-led investment, the negotiation with Tomia broke down.

26. Landau and Bensason, however, did not disengage. Rather, Landau, Lucky and Bensason entered into a common plan and scheme to cut out the other members of Tomia and steal Debtor's trade secrets, know-how and other assets for themselves.

27. Public records show that a Delaware corporation named "Lucky Color, Inc." was formed on January 13, 2023, but on March 29, 2023 an "Amendment Name" was filed in the name of "Trestique, Inc." Upon information and belief, Landau and Bensason caused these filings and changed the name of their entity to Trestique, Inc. to serve as the successor to Tomia after defendants looted Debtor's Trestique cosmetics line and other assets.

28. On May 10, 2023, Landau apparently formed an Israeli corporation named "Lucky Color Israel Ltd." Upon information and belief, Landau created this entity as a vehicle for Landau and Bensason to raise the funds for their plan to loot Debtor.

29. Upon information and belief, Bensason secretly transferred the Company's know-how and control of its trade relationships to the Lucky Defendants. Defendants' acquisition of and exploitation of the Loan and Loan Agreement would have been relatively worthless without the wrongful insider access Bensason provided – the reason Landau agreed to pay Bensason off.

30. On or about July 9, 2023, Landau was added as a "Business Manager" on Debtor's Facebook advertising account. Facebook and Google Ads are the two key platforms for Debtor's advertising of its Trestique cosmetics.

31. On August 3, 2023, Bensason emailed Kapahi advising that the Lender had scheduled a UCC Article 9 disposition of Tomia's assets, "Hey, just wanted to let you know that the article 9 is scheduled for Aug 14th. Notices went out to creditors and Tomia."

32. On or about August 4, 2023, Kapahi's Google Ads administrator access was "revoked". That same day Kapahi was "removed" as a Google Ads "payments

7

user" and "Lucky Color, Inc." replaced Tomia as the Google Ads "payments user" giving Lucky control over this crucial advertising relationship.

33. Bensason, upon information and belief, was the person at Tomia responsible for turning over Debtor's trade secrets and assets to Lucky. Tomia's belief is based on the facts, among others, that Landau and Bensason admitted that they negotiated an illicit agreement for Bensason to facilitate defendants' wrongful takeover of Tomia's business and Bensason had access to Debtor's proprietary information.

34. Also on August 4, 2023, Kapahi received an email from a Florida law firm attaching a Notification of Article 9 Disposition of Tomia Beauty Brands Collateral, dated, August 4, 2023 (the "Notice of Disposition"). The Notice of Disposition stated that the notice was given by "Lucky Color Israel, Inc. (as successor to Decathlon Alpha IV, L.P.)". The Notice of Disposition referenced a sale of "All property" of Debtor in Florida on August 14, 2023. The Notice of Disposition was the first notice given to Tomia that the Loan had purportedly been transferred and the successor to Decathlon was an entity named "Lucky Color Israel, Inc."

35. After multiple internet searches, Tomia found one advertisement of the auction sale, that, like the Notice of Disposition, made no reference to the tradename Trestique, so that any bidder would have no notice of what assets were actually being sold, let alone that the sale was purportedly of the entire Trestique business with over $1 million of inventory, intellectual property, good will, established vendor relationships, etc. The notice of the sale was commercially unreasonable, providing inadequate notice to attract bidders and unreasonable terms.

8

36. The true intent of the Notice of Disposition is found on its face where it states that Lucky planned on credit bidding so that the purported "public auction sale" would actually be made "to the Secured Party" for a credit bid of $960,563.02. There could be no reasonable expectation that any arm's length third-party would go through the process laid out in the Notice of Disposition and bid an amount in excess of the Secured Party to purchase unknown assets.

37. Bensason has acted as a faithless servant.

## FIRST CLAIM FOR RELIEF
(Against Defendants for Breach of Fiduciary Duty and Lender Liability)

38. Tomia repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39. As a member and manager of Tomia, Bensason owed Tomia and its members various duties, including the fiduciary duties of loyalty, care, good faith, full disclosure and fair dealing.

40. As creditors exerting control over Debtor through their corruption of Bensason's management authority, the Lucky Defendants owed Tomia and its members various duties, including the fiduciary duties of loyalty, care, good faith, full disclosure and fair dealing.

41. As set forth above, as part of defendants' common plan and scheme Lucky dominated and controlled Tomia's business and defendants used their control of Tomia to further defendants' purposes of stripping Tomia of its assets and committing related fraud and misconduct.

42. Lucky is subject to lender liability due to its misconduct.

43. As set forth above, defendants, upon information and belief, wrongfully placed their own interests ahead of those of Tomia and entered into an undisclosed common plan and scheme to enable defendants to loot the assets of Tomia.

44. As set forth above, Bensason and the other defendants have engaged in self-dealing, diversion and usurpation of corporate opportunities, misappropriation of corporate assets, mismanagement and disloyal acts causing material injury and harm to Tomia and its members. Defendants have failed to act in good faith and with the requisite level of care required of a fiduciary; and failed to perform Bensason's required functions as a manger of Tomia.

45. Due to Bensason's conduct as a faithless servant, the Court should direct disgorgement and turnover to Tomia of Bensason's membership interest in Debtor and all compensation Bensason received from Debtor and the Lucky Defendants.

46. The Court should direct defendants to fully disclose and account for their misconduct and participation, direct or indirect, in their common plan and scheme to misappropriate Debtor's assets.

47. By reason of the foregoing, Tomia has been injured and is entitled to a constructive trust upon any money or interest received by or payable to Bensason and the Lucky Defendants, turnover of Bensason's membership interest in Debtor and compensation received, turnover of all wrongful payments and interests received by Bensason from the Lucky Defendants, an accounting of defendants' wrongful misappropriation and dealings, a declaration invalidating the Loan Agreement, injunctive relief restoring Tomia's assets and restraining further looting and monetary damages in an amount to be determined, plus prejudgment interest.

## SECOND CLAIM FOR RELIEF
(<u>Against the Lucky Defendants for Aiding and Abetting Breach of Fiduciary Duty</u>)

48.  Tomia repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49.  This Claim for Relief for aiding and abetting breach of fiduciary duty is pled in the alternative the Court finds the Lucky Defendants did not owe a fiduciary duty to Tomia.

50.  The Lucky Defendants aided and abetted Bensason's breaches of fiduciary duty.  The Lucky Defendants, as set forth above, knowingly induced such breaches or participated in them through substantial assistance.

51.  As creditors, Lucky exerted control over Debtor through their corruption of Bensason's management authority.

52.  As set forth above, as part of defendants' common plan and scheme Lucky dominated and controlled Tomia's business and defendants used their control of Tomia to further defendants' purposes of stripping Tomia of its assets and to commit related fraud and misconduct.

53.  Lucky is subject to lender liability due to its misconduct.

54.  As a result of the Lucky Defendants' aiding and abetting Bensason's breaches of fiduciary duty, Tomia has been injured and is entitled to a constructive trust upon any money or interest received by or payable to Bensason and the Lucky Defendants, turnover of all wrongful payments and interests received by Bensason from the Lucky Defendants, an accounting of defendants' wrongful misappropriation and dealings, a declaration invalidating the Loan Agreement, injunctive relief restoring

11

Tomia's assets and restraining further looting and monetary damages in an amount to be determined, plus prejudgment interest.

### THIRD CLAIM FOR RELIEF
(<u>Against Bensason for Breach of the Operating Agreement</u>)

55. Tomia repeats and realleges paragraphs 1 through 54 as if fully set forth herein.

56. Bensason's misconduct represents a material breach of his obligations and Tomia's and its members' rights under Tomia's Operating Agreement, including the duty of good faith and fair dealing and the aforementioned provisions in Sections 4.5 and 4.6 prohibiting competing activities and use and disclosure of Debtor's confidential information except in the proper course of Bensason performing duties on Tomia's behalf.

57. By virtue of the foregoing, Tomia has been injured and is entitled to a constructive trust upon any money or interest received by or payable to Bensason, turnover of Bensason's membership interest in Debtor and compensation received, turnover of all wrongful payments and interests received by Bensason from the Lucky Defendants, an accounting of Bensason's wrongful misappropriation and dealings, injunctive relief restoring Tomia's assets and restraining further looting and monetary damages in an amount to be determined, plus prejudgment interest.

### FOURTH CLAIM FOR RELIEF
(<u>Against Bensason and Lucky for Breach of the Non-Competition Agreement</u>)

58. Tomia repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59. As set forth above, Tomia and Decathlon entered into the Loan Agreement and related agreements for their mutual benefit and to provide Tomia with capital to maintain and grow its cosmetics business.

60. As set forth above, one or more of the defendant Lucky entities claims to be the successor holder of the Loan, which would entail succession to the Loan documents, including the Loan Agreement and Non-Competition Agreement.

61. As set forth above, a condition of the Loan was execution of the Non-Competition Agreement that was incorporated in the Loan Agreement.

62. As set forth above, defendants engaged in a common plan and scheme to loot Debtor's assets and know-how to the detriment of Tomia and to the wrongful benefit of defendants.

63. Through their misconduct, Bensason and Lucky breached the Non-Competition Agreement, including the duty of good faith and fair dealing and the provisions in Section 7 prohibiting competitive activity, acquisition of any ownership interest in any competing business and interference with Debtor's contractual relationships.

64. By reason of the foregoing, Tomia has been injured and is entitled to a constructive trust upon any money or interest received by or payable to Bensason and the Lucky Defendants, turnover of Bensason's membership interest in Debtor and compensation received, turnover of all wrongful payments and interests received by Bensason from the Lucky Defendants, an accounting of defendants' wrongful misappropriation and dealings, a declaration invalidating the Loan Agreement, injunctive

relief restoring Tomia's assets and restraining further looting and monetary damages in an amount to be determined, plus prejudgment interest.

## FIFTH CLAIM FOR RELIEF
(<u>Against Bensason and Lucky for Breach of the Loan Agreement</u>)

65. Tomia repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

66. As set forth above, Lucky claims to be the successor lender under the Loan Agreement.

67. As set forth above, defendants engaged in a common plan and scheme to loot Debtor's assets and know-how to the detriment of Tomia and to the wrongful benefit of defendants.

68. Defendants' misconduct constitutes breaches of the Loan Agreement, including the duty of good faith and fair dealing, and also breaches of UCC Article 9 concerning the conduct of a disposition of collateral.

69. By reason of the foregoing, Tomia has been injured and is entitled to a constructive trust upon any money or interest received by or payable to Bensason and the Lucky Defendants, turnover of Bensason's membership interest in Debtor and compensation received, turnover of all wrongful payments and interests received by Bensason from the Lucky Defendants, an accounting of defendants' wrongful misappropriation and dealings, a declaration invalidating the Loan Agreement, injunctive relief restoring Tomia's assets and restraining further looting and monetary damages in an amount to be determined, plus prejudgment interest.

## SIXTH CLAIM FOR RELIEF
### (Against Bensason and Lucky for Legal Fees Under the Non-Competition Agreement)

70. Tomia repeats and realleges paragraphs 1 through 69 as if fully set forth herein.

71. As set forth above, Lucky claims to be the successor lender under the Loan Agreement, thus also under the Non-Competition Agreement.

72. As set forth above, defendants engaged in a common plan and scheme to loot Debtor's assets and know-how to the detriment of Tomia and to the wrongful benefit of defendants.

73. Defendants' conduct constitutes a breach of the Non-Competition Agreement.

74. The Non-Competition Agreement provides for an award of legal fees to the prevailing party.

75. By reason of the foregoing, Tomia is entitled to an award of its legal fees arising out of this dispute.

WHEREFORE, Debtor respectfully requests that the Court enter judgment in favor of Debtor against defendants, as follows:

A. A constructive trust upon any money or interest received by or payable to defendants;

B. Turnover of Bensason's membership interest in Debtor and compensation received;

C. Turnover of all wrongful payments and interests received by Bensason from the Lucky Defendants;

D. An accounting of defendants' wrongful misappropriation and dealings;

E. A declaration invalidating the Loan Agreement and Notice of Disposition;

F. Directing defendants to return Debtors' property and restraining defendants from further interference with Debtor's business and assets;

G. For monetary damages in an amount to be determined, plus prejudgment interest;

H. For equitable and statutory subrogation of the Loan;

I. Granting Debtor such other and further relief as is just and proper.

Dated: New York, New York
August 14, 2023

DuffyAmedeo LLP

By: /s/ Todd E. Duffy
Todd E. Duffy
Douglas A. Amedeo
Proposed Counsel for Debtor
132 W. 31st Street, 9th Floor
New York, NY 10001
(212) 729-5832
tduffy@duffyamedeo.com
damedeo@duffyamedeo.com

David S. Frydman
FRYDMAN LLC
Proposed Special Litigation
 Counsel for Plaintiff
501 Fifth Avenue, 15th Floor
New York, New York 10017
(212) 355-9100
dfrydman@frydmanllc.com